**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| NUTRACEUTICAL INTERNATIONAL CORPORATION, J. KIMO ESPLIN, JAMES D. STICE, MICHAEL D. BURKE, FRANK W. GAY II, JEFFREY A. HINRICHS, HGGC, LLC, NUTRITION PARENT LLC, and NUTRITION SUB, INC., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on May 22, 2017 (the "Proposed Transaction"), pursuant to Nutraceutical International Corporation ("Nutraceutical" or the "Company") will be acquired by affiliates of HGGC, LLC.

2.      On May 21, 2017, Nutraceutical's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Nutrition Parent LLC ("Parent") and Nutrition Sub, Inc. ("Merger Sub," and together with and Parent and HGGC, LLC, "HGGC"). Pursuant to the terms of the Merger Agreement, shareholders of Nutraceutical will receive $41.80 per share in cash.

3.      On July 12, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nutraceutical common stock.

9.      Defendant Nutraceutical is a Delaware corporation and maintains its principal executive office at 1400 Kearns Boulevard, 2nd Floor, Park City, Utah 84060.  Nutraceutical's common stock is traded on the NasdaqGS under the ticker symbol "NUTR."

10.     Defendant J. Kimo Esplin ("Esplin") has served as a director of Nutraceutical since 2004.  A co-founder of HGGC was the executive chairman and a significant stockholder of Esplin's employer.

11.     Defendant James D. Stice ("Stice") has served as a director of Nutraceutical since 2000.

12.     Defendant Michael D. Burke ("Burke") has served as a director of Nutraceutical since 2000.

13.     Defendant Frank W. Gay II ("Gay") has served as Chairman of the Board of Nutraceutical since the Company's inception, and as Chief Executive Officer ("CEO") since 1994.  Gay is the brother of Robert C. Gay, an HGGC co-founder.

14.     Defendant Jeffrey A. Hinrichs ("Hinrichs") has served as Executive Vice President and Chief Operating Officer ("COO") of the Company since 1994, and has been a director since 1998.

15.     The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

16.     Defendant HGGC, LLC is a middle-market private equity firm based in Palo Alto, California.

17.     Defendant Parent is Delaware limited liability company and a party to the Merger Agreement.

18.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

19.     Plaintiff brings this action as a class action on behalf of himself and the other

public stockholders of Nutraceutical (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of May 16, 2017, there were approximately 9,246,988 shares of Nutraceutical common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26.     Nutraceutical is an integrated manufacturer, marketer, distributor, and retailer of branded nutritional supplements and other natural products sold primarily to and through domestic health and natural food stores.

27.     Nutraceutical's core business strategy is to acquire, integrate, and operate businesses in the natural products industry that manufacture, market, and distribute branded nutritional supplements.

28.     The Company manufactures and sells nutritional supplements and other natural products under numerous brands, including Solaray®, KAL®, Dynamic Health®, Nature's Life®, LifeTime®, Natural Balance®, NaturalCare®, Health from the Sun®, Zhou Nutrition®, Pioneer®, Nutra BioGenesis®, Life-flo®, Organix South®, Heritage Store®, and Monarch Nutraceuticals®.

29.     Nutraceutical owns neighborhood natural food markets, which operate under the trade names The Real Food Company™, Thom's Natural Foods™, Cornucopia Community Market™, and Granola's®.  The Company also owns health food stores, which operate under the trade name Fresh Vitamins®.

30.     The Company manufactures and/or distributes one of the broadest branded product lines in the industry, with approximately 7,500 SKUs, including approximately 750 SKUs exclusively sold internationally.

31.     On January 26, 2017, Nutraceutical issued a press release wherein it reported its results for the fiscal 2017 first quarter ended December 31, 2016.  The Company reported that net sales for the fiscal 2017 first quarter were $56.6 million, compared to $56.0 million for the same quarter of fiscal 2016.  Net income was $4.2 million, or $0.46 diluted earnings per share, compared to net income of $4.2 million, or $0.45 diluted earnings per share, for the same quarter of fiscal 2016.  With respect to the results, Individual Defendant Gay commented:

> Our fiscal 2017 first quarter net sales, gross profit and Adjusted EBITDA all remained strong and reflect the continued success of our overall business strategy, which includes a focus on maintaining and growing our core branded business while continuing to acquire and integrate new brands.  Management is hopeful that financial improvements may be realized from capital investments and operational consolidations at certain of its manufacturing facilities by the end of this calendar year.  During the remainder of fiscal 2017, a key management focus will be on increasing market share in the health and natural food stores we serve through enhancements to our sales and marketing programs.  We also continue to pursue expansion and growth opportunities into complementary natural product channels including internet retailers and the professional and direct-to-consumer channels.  Management continually reviews our cost structure with a focus on reducing controllable expenses and improving efficiencies in all areas of the company.  We appreciate the long-term support of our customers and stockholders as we pursue our business strategy and strive for continued financial success.

32.     On April 27, 2017, Nutraceutical issued a press release wherein it reported its results for the fiscal 2017 second quarter ended March 31, 2017.  The Company reported that net sales for the fiscal 2017 second quarter were $61.2 million, compared to $59.5 million for the same quarter of fiscal 2016.  Net sales for the six months ended March 31, 2017 were $117.8 million, compared to $115.5 million for the same period of fiscal 2016.  With respect to the results, Individual Defendant Gay commented:

> Our fiscal 2017 second quarter net sales grew at 2.9% over the prior year, which included growth both domestically and internationally.  Gross profit, net income and Adjusted EBITDA remained solid.  A number of enhanced marketing and sales initiatives were rolled out in the second quarter, which we are hopeful will expand customer sales in several of our business channels throughout 2017 and

beyond.  Additional initiatives are in development.

Our pursuit of complementary growth opportunities in alternative natural product channels, like the direct-to-consumer channel, led us to complete the acquisition of the Zhou Nutrition brand in the first week of April.  This approximate $19.8 million acquisition accelerated our entrance into internet sales, which was already a key 2016 internal investment initiative.  During the first quarter of fiscal 2017, we commenced a re-alignment of our marketing, sales and administrative groups. We expect that by the end of fiscal 2017, the annualized reduction in employee expenses going forward will exceed $4.0 million per year.

The company is remodeling and investing in new equipment for its Tulsa, Oklahoma facility so it can increase efficiency and accommodate the relocation of its New York liquid fill operations. We feel that we are at an exciting juncture for the company's future.  We believe that the various initiatives we are pursuing present an exceptional opportunity for future organic and new channel growth and we are optimistic about their potential.  Management is appreciative of our stakeholders' support for our long-term business strategy.

33.     Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

34.     Despite a limited and inadequate "go-shop period," the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

35.     Further, the Company must promptly advise HGGC of any proposals or inquiries received from other parties.

36.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under

extremely limited circumstances, and grants HGGC a "matching right" with respect to any "Superior Proposal" made to the Company.

37.    Further locking up control of the Company in favor of HGGC, the Merger Agreement provides for a "termination fee" of up to $12 million payable by the Company to HGGC if the Individual Defendants cause the Company to terminate the Merger Agreement.

38.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

39.    Additionally, Parent and Merger Sub entered into a voting and support agreement with Individual Defendants Gay and Hinrichs, pursuant to which they have agreed to vote their Company shares in favor of the Proposed Transaction.  Accordingly, approximately 10.4% of the Company's stock is already locked up in favor of the merger.

40.    The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

41.    Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

42.    Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

43.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

44.    The Proxy Statement omits material information with respect to the Proposed

Transaction, which renders the Proxy Statement false and misleading.

45.    First, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Peter J. Solomon Securities Company, LLC ("PJSC").

46.    With respect to PJSC's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%.

47.    With respect to PJSC's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by PJSC in the analysis.

48.    With respect to PJSC's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by PJSC in the analysis.

49.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Board"; and (iii) "Opinion of the Company's Financial Advisor."

51.    Second, the Proxy Statement omits material information regarding potential conflicts of interest of PJSC.

52.    While the Proxy Statement provides that PJSC has "acted or [is] acting as

financial advisor to the Company, and certain of the Company's and Parent's respective affiliates in connection with certain mergers and acquisitions transactions," the Proxy Statement fails to disclose the nature of such services and transactions, and the amount of compensation received by PJSC for such services.

53.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Board"; and (iii) "Opinion of the Company's Financial Advisor."

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Nutraceutical's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nutraceutical**

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Nutraceutical is liable as the issuer of these statements.

58.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and HGGC

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants and HGGC acted as controlling persons of Nutraceutical within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Nutraceutical and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence

and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66.     Each of the Individual Defendants and Nutriton was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

68.     HGGC also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

69.     By virtue of the foregoing, the Individual Defendants and HGGC violated Section 20(a) of the 1934 Act.

70.     As set forth above, the Individual Defendants and HGGC had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  July 21, 2017                              **ABBOTT LAW FIRM**

By: _____

Nelson Abbott
3651 North 100 East, Suite 350
Provo, UT 84604
(801) 374-3000

*Attorneys for Plaintiff*

14

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800